Good morning, Your Honor, and members of this Court. Good morning, Ms. Agostini, and the individuals with you who I do not know. I'm Harold Guttenberg. With me is Don Langston. We are with the law firm of Greenberg & Bass, who are counsel for Appellants Richard and Andrea Sherman. This case is one which is governed by the application of existing law. It concerns the jurisdiction of this Court to hear the matter, as set forth in Article III, Section 2 of the United States Constitution, the application of the provisions of the Bankruptcy Code to the facts of this case, and the timeline in which events of this case have occurred. It has often been said that timing gives everything. I think that when the Court has heard everything, they will agree that such is the case herein. There are three primary issues which we believe are before the Court at this time. The first issue is consistent with the order of this Court on March 28, 2005, in which the Court requests that the parties be prepared to discuss the Arizonans' case. In order to complete an analysis of the SEC's standing pursuant to Article III, one must analyze the relationship between the SEC on the one hand and the receiver, Thomas Lennon, on the other hand. He was the District Court-appointed receiver in SEC v. Whitworth Energy Resources. As we will attempt to demonstrate herein, the SEC and the receiver are one and the same. The SEC and the receiver are, and always have been, the alter ego of each other in this case. Why does that matter? Because the acts of the receiver in settling the case go to the settling of the case for the benefit of the SEC. The SEC had received permission from Judge Snyder to exercise its enforcement powers. That is in the order of discouragement. And she informs the SEC that in order to enforce the judgment, you have to go to bankruptcy court and protect your interests. We contend the SEC did not. Why isn't the position more like co-creditors? You say, let's say that apart from leaving aside all the enforcement powers of the SEC, you have two partners that are two entities that are separate to which a joint debt is owed. You settle with one entity. It doesn't discharge the debt owed to the second entity, right? That's correct. So then let's carry the hypothetical further. The debtor files bankruptcy and the creditor, who did not obtain the benefit of the settlement, successfully obtains a non-dischargeability order. What's wrong with that? Nothing in that scenario. So certainly the creditor, whose judgment was not satisfied by the settlement, has standing. And on the other hand, if the debtor had fully paid the co-debtor and discharged the debt, that might be another matter. But I think we can distinguish, Your Honor, your example with the facts of this case. In this case, the receiver was appointed on an application of the SEC in the underlying case of Whitworth Energy Resources. Well, doesn't your argument depend on whether or not the SEC's, the obligation to the SEC was extinguished by, I mean, that's your whole argument. Hold on there. Go ahead. Let me hear your answer. Okay. Thank you, Your Honor. In effect, the settlement agreement, the stipulation for entry of non-dischargeability included the disgorgement judgment given by Judge Snyder to the SEC. At that hearing, she found and the receiver agreed he was stayed from further proceedings. However, under Bankruptcy Code section 364b-4, which is part of the order issued by Judge Snyder, she found that they could enforce it, but not as to money collection. They would have to go to the bankruptcy court. What are the police powers of the SEC to get injunctive relief, to refrain people from doing other things, to maybe getting a mandatory sentence? Well, she did. She also ordered disgorgement on the motion of the SEC, basically, but to the receiver. Right? Her order, the underlying order here was an order to pay to the receiver. That is correct. We can have a settlement, and this is why I'm not sure that the monetary settlement matters. We also, part of the settlement with the receiver was that the debt is non-dischargeable. Right? That is correct. So if the debt is non-dischargeable, then the SEC, presumably, if it has a problem, doesn't have the problem in the bankruptcy court anymore because the debt is now non-dischargeable. Whatever it is, whether it's settled or not settled or whatever, it's non-dischargeable. That's not a complete statement, Your Honor, and let me explain why. It was a stipulation to enter a judgment for non-dischargeability. However, very much like an accord and satisfaction when parties have an agreement, the agreement provides and the stipulation provides that in the event two payments of $25,000 are paid, that the receiver will dismiss both his adversary's complaint. That is in paragraph 5. I think. That's true, but I thought the non-dischargeable – I unfortunately don't have it in front of me.  I don't have it in front of me. The non-dischargeability statement was not dependent on the judgment. It was simply a statement that this is non-dischargeable. No, Your Honor. I can give you the reference if you want. I'll have to check. I don't have it with me. I can direct the Court to that reference. The tab 22. I don't have it, so it doesn't matter. Thank you. I'm sorry, Your Honor. But that was the basis. In other words, if I have an agreement with someone and I agree to pay X dollars and they will not enter a stipulation for judgment. Yeah. You're saying they're forbearing from entering the judgment. But it doesn't – that gets back to my question. It all depends on what power the trust the receiver had and whether the SEC had independent powers to enforce it, right? The receiver had all the power. I mean, that's your contention. The SEC says no. Isn't that the critical issue here? If there are any rights – let's take a hypothetical. If there were any rights that the SEC retained independent of the receiver, you have to agree that there was standing. Right? Okay. Okay. And so it all comes down to whether or not the SEC, by virtue of this agreement order, retained any independent rights from the receiver. Right? That's correct. Okay. But that's not the case here. The statement in the settlement order, by the way, is, on the settlement, is subject to the terms and conditions of the settlement agreement for its sole purpose as a settlement agreement. Defendant agrees and stipulates that the judgment and non – the contempt judgment and discouragement claim are non-dischargeable. So it's not contingent. That's paragraph 3, Your Honor, that you just read? No, it's paragraph 1. Of the? Of the settlement agreement. Please, I would ask the Court to look at paragraphs 3, 4, and 5. I've read 3, 4, and 5, but it's the – 1 is first, and it says that it's non-dischargeable. So that's my understanding. But Judge Thomas's point may still be correct and may not be binding on the SEC. It seems to me that you prefer to do that. Yeah, I mean, basically what you're saying, if I understand your argument, is, one, you agreed that the debt was non-dischargeable, but the receiver was agreeing that there would be no action on your concession to reduce that to judgment and enter it if certain conditions were performed. Is that your understanding of the deal? And upon final payment of the $25,000 in good funds, the receiver shall immediately dismiss the adversary action. But the effect of all of that was that the concession of non-dischargeability was a nullity because, in fact, the debt was discharged. Right? It was discharged by the payment. Yes. I mean, you're – you're discharged by the partial payment. But it also discharged any monies owed to the SEC. I think we're saying the same thing, but in the real impact of this, the concession that the entire debt was non-dischargeable became a nullity because, in fact, the effect of the agreement as implemented was to discharge the debt based on a partial payment of the total amount. Right? That is correct, Your Honor. So at that point, the entire debt was discharged, not just the partial. Right? That is correct. To the receiver. And the only question then is whether the SEC retained some independent rights. So tell me why you don't think the SEC retained any independent rights. Because the receiver was vested with – and I will get that, Your Honor, in a second. The receiver was vested pursuant to Section 8 of the Order of His Appointment, which is covered by tab 2, pages 128 and 129, and then 136 through 139. Vested with full and complete control over the defendant companies, their subsidiaries and affiliates, including, but not limited to, the defendant companies' chosen – belonging to and in the control or possession of the defendant companies. He was appointed to recover money for the corporations to pay those parties who were injured. And who were the injured parties? People who had invested in the companies and creditors. That was his banner upon which he went forward. The order of his authorities is very extensive. It is covered in the reference that I gave you. Well, I agree with that. But tell me, what provision says then the SEC reserves no power at all? That's correct. The SEC was brought in to exercise their police powers, to have injunctions, to stop acts, other things. None of that exists today. Any money that would have been collected by the SEC would not have been retained by the SEC. The order makes it clear. That money is paid to the receiver. The record is replete that the receiver pursued the motions. The receiver joined all motions. The receiver was active in every portion of this case. The SEC was rarely seen at all. Well, rare doesn't mean no standing, though. Well, that's true, Your Honor. Let's take a different case. You know, it wasn't cited because it really isn't precisely on point. But we had a case, it was Pershing Park Development, in which essentially the debtor had no more interest in the property, as I recall the facts. But anyway, the net result of all this is that they filed a suit outside of bankruptcy. The question is whether they did have standing because, in fact, they were unlikely to receive any money. But we said, well, the potential of some receipt of money, whatever the residual rights may be, and it might end up to be nothing, was enough to confer standing. Isn't that where we are here? The SEC retains some potential to recover some money on this. We don't know whether they're legally entitled to it or not, but they are. You would argue that the receivers, exercise the receiver rights, extinguish their rights. But that's not a standing issue. That's an issue on the merits, isn't it? I believe that's on the merits. But I think on a standing issue, there is nothing for the SEC to enforce. The collection of money, if we follow the trail of the collection of any money, it doesn't stay with the SEC. It ends up with the receiver. Well, that was the argument of Pershing Park, is that the debtor or whatever entity was asserting the claim, they said, well, there's no possibility of recovery. And we said, well, that may be so if you play it out. But that's a matter for distribution. The fact that they had the right to retain it is enough to confer standing. It's not a credential case. Do you want to briefly address the merits of the case? Assuming standing for the moment. Okay. Outside of standing? Yes, please. Okay. We have an issue that relates to the – well, actually, I would like to save it for rebuttal. I have ICR. Why don't you address Padilla and how that – how you view that? Okay. In the jurisdiction of the court, the jurisdiction issue in Padilla? Okay. In Padilla, what happened in Padilla was that the date for discharge had not occurred. What happened is the events occurred. The bankruptcy court lost jurisdiction when the notice of appeal was filed. That then went up to the – I believe the BAP, bankruptcy appellate panel, at that time. Our case is a different case. In our case, the Chapter 7 petition was filed February 20th. Creditor's meeting was April 14th. The last day to object to a discharge was June 23rd. There were no exceptions to the discharge save and except the receiver's complaint. The SEC did nothing to protect its interest. If this Court takes the position that there is a separate interest for the SEC, they didn't file a complaint for non-dischargeability. They did absolutely nothing to protect their rights. On the morning of June 23rd – June 24th at 12.01, the law is clear. The discharge is entered forthwith. The fact that the discharge doesn't get entered until sometime in October represents nothing more than a ministerial act of the clerk of the court. And I cited a case relating to that, and that's the Dietz case. And I sent the letter through on that because we weren't sure what had happened with that. And I sent that through yesterday. Dietz is very clear. It says, Bankruptcy Court ruled that because no objection had been filed within 60 days after the meeting of Dietz's creditors, Dietz's discharge was deemed to have been entered on the 60th day. That's the 60-day rule. That's correct. And that's what we have here. But we have an actual date that had been set. So the last day to object being June 23rd, the SEC – The Padilla standards aren't met because they had an alternative, which was filing a petition – filing for non-discharge. They didn't do it. And now they're trying to dismiss the whole bankruptcy. But that because Padilla says you can't do – there's not cause if there's an alternative, and there was an alternative, but they didn't take it. Is that basically what you're saying? The alternative had – was that they were warned by Judge Snyder. They were told by Judge Russell, who has served on the Bankruptcy Court for over 30 years, you have your remedy. Go file a – It wasn't a remedy. The remedy was to file a petition for non-dischargeability. Yes, Your Honor. 523 or 707, I believe, is the other number. They didn't do that. That is – And what would have been the basis for non-dischargeability? What was the base of the agreement?  Under 523. Under 523. I don't know that they had any basis. They've even admitted that they had – the SEC admits they had no basis to believe that anything other than the contempt judgment of $54,000, everything else was dischargeable. In fact, they make a point of that in one of their – Partly in breach of fiduciary duty, no? No. I don't think fiduciary duty would have applied in the case. So if they had no 523 remedy, why isn't their argument good that their only remedy was 707? Because it didn't stay – it may be a good argument, but it doesn't stay the running of the discharge. And their claim had not been perfected or noticed done by either asking for an extension of time in which to file a complaint, filing a non-dischargeability complaint. It should also be noted that the receiver did not file it on behalf of the SEC. He filed his non-dischargeability complaint on himself. They did nothing. They could have had a – gone to court with a motion to get an extension of time. One of the cases – If they're alter egos, then it was good enough. Pardon? The whole thing sort of stands and falls together. If they are essentially alter egos, which is what your first argument is, then the receiver filing a non-dischargeability petition was sufficient, but also would take the case out of Padilla and out of 707. That's correct. And then the statute changed on 707. And the Morgan case, which I did cite in the brief, stands for a different proposition, that filing a 707A prior to the amendment of 4004 does not stay the time for filing an exception or a complaint. And we've cited that in our brief. The SEC cannot have it both ways. They can't argue on one hand that they're entitled to the benefits of the receiver and not take the burden of the receiver's settlement of this case. It's one or the other. I have 54 seconds left. Actually, you're over 54 seconds, but we'll give you some time. May I beg for two minutes? Yes, sir. Thank you. Thank you. Good morning. May it please the Court. I'm a little short on voice today. I will do the best that I can. May it please the Court. My name is Hope Augustini, and I represent the Appellee Securities and Exchange Commission. In view of the Court's question about standing, the Commission thought it was important to have both Mr. David Zerro, counsel for the court-appointed receiver, and Ms. Karen Madison, senior trial counsel for the Commission, available in case the Court had any further questions. But I would like to start out by stepping back and addressing quite directly Appellant's notion that the risk, I believe his words were the SEC and the receiver are one and the same, with the alter ego settlement with the receiver equates with the settlement with the SEC. That is just not so. The Commission and receiver play different and independent roles in the SEC's enforcement proceeding and play different and independent roles in the bankruptcy. Let me ask you a question. Is your position, I understand the SEC has a public role, and we can talk about that separately, but is your position that the SEC still has some monetary claim outstanding despite the receiver's settlement of it? Yes. Okay. How is that? It would be set off, to the extent that Mr. Sherman has paid the $50,000 to the receiver, it would be set off from the total amount due and owing under the contempt judgment The debt was to the receiver because that's the way the SEC set it up. The SEC went into court originally, asked for a receiver, and the judgment, underlying judgment here with regard to Mr. Sherman was that the money be paid to the receiver, not to the SEC. So how does the SEC have any monetary claim left? Okay. I'd like to really explain that because I understand the Court's question. The receiver in an SEC enforcement proceeding wears two hats, and this was quite — this was explained by the BAP in SEC v. Cross, which is why we set that up. But in SEC v. Cross, BAP's assumption, as I understand it, was that the SEC was there in some public enforcement role, not because they had a pecuniary claim. Let me — okay. I would like to address the fundamental question here. The SEC, as is quite often the case, brings an enforcement proceeding in a Ponzi scheme. As is quite often, the Court appoints a receiver. The Court-appointed receiver stands in the shoes of the entity he is appointed to be the receiver over, the receivership estate, which in this case were the companies that perpetrated the Ponzi scheme. The receiver — Analogous to a trustee in bankruptcy. I'm sorry? Analogous to a trustee in bankruptcy. That's correct. The receiver is charged under the appointment order with whatever the district court sets forth in the appointment order. And the receiver in this case, as is often the case, is charged with amassing, collecting the assets and pursuing claims on behalf of the receivership estate. The SEC does not thereby lose any authority to pursue and seek disgorgement orders against wrongdoers. The SEC is the government entity charged with enforcing the security laws. Right. But in this instance, they did seek a disgorgement order, and they got a disgorgement order. Correct. But the disgorgement order was to pay to the receiver. That's correct. And I — you'll recall I said the receiver wears two hats. The receiver is — under the appointment order is to do the things in the appointment. For — as explained in Cross, for reasons of practicality and convenience, the district court at times, and it did so here, will grant the SEC a disgorgement judgment for reasons of practicality and convenience, order that the party owing the disgorgement judgment pay it to the receiver. The receiver in that instance is simply a repository to collect the money. Now, the physical — let me interrupt you. The physical judgment in this case is in whose name? The SEC. And is the receiver named on the judgment? The receiver — Is it a co-judgment debtor? No. All right. Not on the disgorgement judgment. Right. So the SEC has the judgment, and there's a court order that the judgment be paid to the receiver. That's correct. So your claim in bankruptcy is based on the judgment. It is based on the judgment. Now, it's important to understand what happened when the district court was entering the disgorgement in favor of the SEC. The receiver had also moved for disgorgement before the district court. But based on claims that the receivership estate had, those claims are not the same claim on which the judgment was given to the SEC. The SEC argued disgorgement was due an owing under the theory espoused by this Court in SEC v. Colello, quite simply, that the — Mr. Sherman had received proceeds of fraud. He had no claim of entitlement to them. And the Court has equitable authority in SEC enforcement actions to require the third party to turn the money back over. Mr. — the receiver in this case was pursuing a contract claim on behalf of the receivership estate. The district court recognized — at the time it was considering both the SEC's position on disgorgement and the receiver's claim for disgorgement — recognized that a petition in bankruptcy had been filed. And he realized — and she realized that she could not enter a judgment in favor of the receiver on the receiver's claims on behalf of the receivership estate. On the other hand, the government was exempt from the automatic stay and accordingly was given a judgment. At that point, the receiver pursued — the receiver and the commission pursued different avenues in the bankruptcy court. The receiver did not have a judgment. The receiver still had claims. And as the district court properly noted, the receiver couldn't get a judgment in the district court but was required to go prove those claims in the bankruptcy court. The receiver filed a nondischargeability action seeking to prove that Mr. Sherman owed a debt to the corporations and seeking a determination that that debt was nondischargeable under various provisions of Section 523. The commission looked at its disgorgement judgment, and because the judgment was based on the theory espoused in SEC v. Colello and was not grounded in a finding of that Mr. Sherman had obtained the money by fraud, recognized — the commission recognized in that instance it did not have a nondischargeability action under Section 523A2A. Quite commonly — Well, 523 also has a fiduciary provision. That is not — that is not a claim that the commission would pursue wearing its enforcement hat seeking to enforce the — Because he wasn't a fiduciary with respect to it? I'm sorry? Because he wasn't a fiduciary with respect to it? That's correct. He was a fiduciary with respect to the companies, which is why the receiver was pursuing that claim. When — so to turn to the Court's question about whether the commission not — nonetheless has standing after the receiver is settled, I think it's important the context that I have set forth provides the answer to that, because when you look at the settlement agreement entered between the receiver and Mr. Sherman, it's quite clear what was being settled. It was the adversary proceeding in which the receiver sought to prove and find nondischargeable claims on behalf of the receivership estate. The SEC was not a party to this adversary proceeding. The SEC did not appear at the settlement discussions or sign on to the settlement agreement. This was quite strictly an agreement between the receiver and Mr. Sherman. And I would add, if I may get a drink of water. Yeah. Go ahead. Ray Cross explains why the receiver and the commission might be doing different things in the bankruptcy court. All right. Let me stop you there. Let's assume for the moment that it's not the SEC's fault here, but it's a bank. All right. And banks can get orders of receivership as well. Carrying it all the way through, at this point, I mean, let's assume the bank has the judgment in its name. The order is to pay over to a receiver. Receiver makes a deal. But the judgment has not been discharged by the deal. So the argument would be for the bank that it has standing in bankruptcy court to enforce the judgment or pursue its rights in bankruptcy, notwithstanding any deal that the receiver made. Right? So far, so good. I will take it as that's the point. Well, I mean, that's your monetary argument, right, that regardless of your police power, you have standing to pursue the monetary or the disgorgement judgment, regardless of your standing as a public entity. Right? I'm not sure that I would divide the two in my head. But for purposes of that question ---- Well, it may be important, though. I believe that the commission is not standing in the same ---- is not coming to the court in the same position that a bank is. We are the government entity charged with enforcing the security clause. As this Court said and as ECV read, the ---- it is extremely important in the pursuit of enforcement of the securities laws for the commission to be able to require wrongdoers and people who hold fraud proceeds to disgorge them. Right. But then I think you're getting yourself into perhaps some trouble because you've got a public entity and an individual bankruptcy. In other words, your public power is over corporations. And this is an individual Chapter 7. So the argument might be made, independent of any monetary claim you have, that the public interest of the SEC might not extend to an individual debtor filing Chapter 7. I believe that notion would run squarely in the conflict with SECD writ, because the whole point of disgorgement is to require people ---- But that's not ---- wasn't a bankruptcy case, was it? I'm sorry? Was that a bankruptcy case? No. What Judge Thomas is saying is if you don't have a monetary claim, which is what we've been spending all the time on, then if you were trying to stand simply on your police powers or interest in enforcing the SEC securities laws, that does under the bankruptcy laws, under Chapter 11, for example, give you standing in bankruptcy court in a Chapter 11, but this isn't a Chapter 11, it's a Chapter 7, and what would you be doing here other than if you have an interest in a disgorgement judgment? Okay. Well, I take it from the proposition, though, that we're now moving away from what we have here, which is we have a judgment. Well, yes. And we are a judgment creditor. Well, that's what I ---- that's what my question is. I mean, if I take it that independent, that was my question, independent of any police power, so you might assert, you claim standing by virtue ---- you can, in your argument, claim standing by virtue, in your opinion, of your monetary judgment alone. Right. Okay. Now, let's move to the second part. I understand that, and I know they'll have a response to it, but the second part. Now, let's assume you didn't have any monetary interest at all, that you just have your police power. To get to the question, amplify your answer on why you think that your police powers alone give you standing to intervene in any individual Chapter 7 bankruptcy. In the absence of any debt owed to the commission? Yes. No, it wouldn't be there. I mean, the commission is only here because it's seeking to enforce the disgorgement judgment and the contempt judgment, which we haven't spent any time discussing yet either. So, but I take it from your question. At certain points, you seem to be relying on SEC v. United States Realty and other cases which seem to suggest that there was the you have a separate public interest here, but you're not doing that anymore. I don't believe that was the intent. I mean, I believe we stand before the Court as a judgment creditor seeking to have the bankruptcy dismissed under 707A, and under In Re Padilla, we had no other recourse under the Bankruptcy Code because 523 in this particular instance was not available to have our judgment deemed. And to be more specific about that again, although 523 does include violation of fiduciary duty as a basis for non-dischargeability, you think it has to be a non-fiduciary duty to you in order for you to have that basis? Yes. I believe we looked at the provisions of 523 and decided we didn't have fraud, we didn't have we don't go in arguing breach of fiduciary duty. Because the receiver did. The receiver did go in and claim breach of fiduciary duty. Yes, the receiver's adversary complaint says 523A4 and 523A6. And you think the difference is that the receiver standing in the shoes of the company had a essentially lawyer-client privilege which had been breached or could at least allege that. But you couldn't. Is that basically the claim? Yes. Yes. In other words, we have a judgment. And our judgment was based on the theory in essence. Okay. Now let's get to the merits merits, i.e., what is the basis for the for-cause discharge of the bankruptcy? Could I just, with a quick indulgence, briefly address the mootness question, which is the other issue? And I believe Padilla stands on all fours here. First of all, Mr. Sherman argues that the date, 60-day period was June 23rd. We disagree. There's, I have been told by a bankruptcy counsel, and I'm not, I have no expertise in bankruptcy, but I believe the government has 180 days on a proven claim. This is important, because when you look at the timeline, on June 5th, the bankruptcy court denied the motion to dismiss. On July 16th, the commission appeals to the district court. The discharge was not entered until October 1st. Under Padilla, the entry of a general discharge, quote, drastically changed the status quo and amounted to a final adjudication. The bankruptcy court's discharge order is therefore null and void. So I believe there is no mootness in this case. I think Padilla is on all fours. And you don't think you're time-barred because of the 180-day rule? Well, I would, before getting to that argument, I would dispute that the case law that Appellant cited is on all fours to this case, because in those two bankruptcy court decisions, what the bankruptcy court was confronted with was a motion for dismissal under 707A that was still pending before the bankruptcy court at the time the general discharge was entered. Now, that's not the situation we have here. The bankruptcy court had adjudicated the motion, had denied it, and it was on appeal. So I would argue that the two cases that are outside of this circuit are not on all fours. So I'm not sure that I would even get to the third step, Your Honor, of arguing that he's wrong on the time period. Okay. Well, why don't you turn then to the merits? Absolutely. I think that the record supports dismissal for cause. The standard for cause was set forth, I believe, that eventually we all get back to N. Ray Kahn. In this circuit, you have N. Ray Padilla, which relies on N. Ray Huckfeld as setting forth the appropriate standard for cause. N. Ray Padilla, it must be remembered, did not actually have to address the facts of the case and how the for-cause analysis is applied because the court found that there was another alternative avenue under 707B and that 707A should not have been used when there is a claim under 707B. Now, but in stating that bad faith is not cause, the court was relying on the standard set forth in Huckfeld. Huckfeld, in turn, relied on N. Ray Kahn as really providing a definitive discussion and persuasive discussion of what the cause standard is. N. Ray Kahn said, And under those two prongs, N. Ray Kahn provided some examples of what it would determine to be what could be called egregious facts supporting a for-cause dismissal. An attempt to, if the debtor files a bankruptcy petition solely to interpose the automatic stay against ongoing proceedings in another court, a pattern of delay and scorched earth tactics with this particular creditor. If the petition is filed to avoid the district court, avoid another jurisdiction, jurisdiction with respect to contempt. In other words, are they using bankruptcy to hide from the consequences of contempt? So on the one hand, you have efforts to obtain the benefits of bankruptcy. And on the other hand, the second prong of N. Ray Kahn, which is fraudulently and intentionally taking action to avoid the detriments.  Would the contempt judgment be non-dischargeable or dischargeable? I'm sorry. Would the contempt judgment be dischargeable? Under what? Oh, yes. Oh, I think that there was no possibility under 523A, 2A, under the actual fraud section for non-dischargeability because, and I believe the district court actually made the point in the order on review here, that the contempt judgment did not depend on a finding of fraud. The contempt judgment quite simply depended on the fact that Mr. Sherman had violated three court orders. So I don't think it may be in some instances a contempt judgment would present a fraud question under the non-dischargeability provisions, but in this instance it did not, and the district court said so. And it seems to me that the, I mean, if most bankruptcy judges were not necessarily hooking it to fraud but would consider a contempt judgment as non-dischargeable under 523. Under what provision? Well, under, we have some cases on perhaps, we've stretched the idea of maliciousness pretty far. Some of the other, I don't have the code sections in front of me. So it seems to me there's a pretty good argument that a contempt judgment is something that could be raised under 523 as non-dischargeable. Perhaps. The commission did not believe that it could in this case. The district court agreed. We have recent cases defamation is non-dischargeable under that theory. And if a defamation judgment is willful malicious injury, it's hard to see how a contempt judgment wouldn't be. Willful malicious injury to who, though? Whoever holds the judgment. Right. But in the commission, you know, the commission's contempt judgment, it was based on the fact that he violated the three orders. Yeah, I understand. Not necessarily. Yeah. And I should also say that In re Conn recognized that 707A doesn't apply if there are other more specific provisions under the code. The reason I raised it is because you were, in quoting from Conn, were talking specifically about contempt. Yes. And even In re Conn believes that notwithstanding that other provisions, you know, displace, if you will, a 707A theory, that potentially a contempt judgment would qualify. I mean, it's something I just started thinking about here. But the bulk of the judgment was not for contempt. No. And did not depend on any really, because it was based on RIND, didn't really depend on any wrongdoing by Sherman. Well, I would distinguish wrongdoing from fraud. I mean — Well, even any wrongdoing, though, because the whole notion in RIND, as I understand it, is that you can go after a nominal third-party — I think that's Colello. Colello. I'm sorry. Colello. Yes. Who is just sort of a repository who isn't really — so he doesn't have to have done anything wrong. He just has to be sitting there with the money without any dispute about it. So there's no — there's no implication from the judgment that he's done anything wrong, right? The judgment did not — a judgment under a Colello theory does not depend on a — And your other theory depends on this being a judgment under a Colello theory. So that's what we have to assume we have here. If the SEC is here, as you said earlier, it's under a judgment under a Colello theory. Yes. But I guess I'm not sure — are you saying — It only matters with regard to the cause question. I mean, what is it that ultimately is the cause here? Ultimately, what the cause here are the facts and circumstances leading to the filing of the petition that led the district court to find, based on this undisputed record, that the filing of the petition was not designed to pursue what courts construed to be legitimate — Well, certainly the fact that there was a judgment that he was trying not to pay at that point, that's not — I mean, the bankruptcy court's reaction to this, all of this, is this is just run-as-a-mill bankruptcy. And certainly that piece of it is run-as-a-mill bankruptcy, right? The fact that there was a judgment — If you're stepping back most generally and saying any attempt to avoid paying judgments and — but I don't believe the government is standing here in the shoes of a bank trying to collect a, you know, a — To get to the door on 707 anyway, you have to be alleging a broader theory, not just based on your debt, right? That's correct. Now, going back, the bankruptcy court just entered a finding, a fairly terse finding. What — did you submit evidence in the district court? You have to refresh me. Or was it based solely on the record in the bankruptcy court? Did we submit additional evidence? Yes. No, I don't believe so.  The basis — Did you submit evidence in either of the courts about the schedule of debts, which the district court relied on very heavily? My understanding is that you didn't argue that and that there was no specific other evidence. Is that right? Other than the schedule itself. I would like to say here's what the commission provided when it filed the motion  It was relying on the undisputed facts and circumstances. With respect to the actual bankruptcy petition and schedules, the commission argued that he was overstating his liabilities. The commission believed that that record, which is undisputed, establishes cause, and this court in Ray Padilla established that that is in essence a legal inquiry. Right. So my question was not to interrupt, but to tie off my inquiry. Normally in a 707 hearing, if the district court thought the bankruptcy court got it wrong, on a matter of law, they'd probably send back for further findings. I gather your argument here is that all of the evidence was still — the district court was looking at the same evidence de novo, and there is no — there would be no reason to send it back for findings. That's correct. Okay. That's correct. So that in essence, even at this court's level, it becomes in essence an application of the undisputed record. And the schedules and the bankruptcy petition are part of the for cause inquiry. Yeah. So why is this different from the normal case where the debtor exaggerates some expenses and debts? And I think the district court sort of said, well, this is the boys will be boys theory of bankruptcy, and debtors run amok a bit. What makes this different? I think that, first of all, cause is the facts and circumstances. So you have to look at the whole picture. And you don't look at the schedules and the potential misstatements in isolation from the rest of the inquiry. And I think the district court — you know, there were three legs of the stool here, and this part of the analysis was the third leg of the stool. The — we're not confronted with quite — I don't believe the district court thought it was confronted with little pieces of misinformation. I believe the district court's decision found that there was a pattern. As you looked through the entire bankruptcy petition and the schedules attached, there was a pattern that suggested that Mr. Sherman was overstating his need for bankruptcy when you collect the liabilities together with the misstatements. Kagan. What's troublesome is there was no hearing, as I understand it. There was no external evidence as to any of these claims. If there was an explanation, no one ever asked for it. Is that unusual and odd? I mean, it was all done in papers. Was there an opportunity for a hearing? Well, I would expect that taking your point, and I do take your point, one would expect that if Mr. Sherman disagreed with the factual, to the extent that he considers these to be factual findings by the court that he didn't have an opportunity to rebut, one would expect that he files a motion for reconsideration to get the facts in before the district court. He didn't do that. But if a district court made a ruling that was improper in a due process sense, it's still improper in a due process sense whether he made a motion to reconsider or not, i.e., he shouldn't have done — she shouldn't have made that ruling without having some information as to the impropriety of these claims, other than on their face. But I'll go back to the point that the commission did not rely on those particular issues when it filed the motion to dismiss for cause. We believe that the record, even apart from that issue, and I would also point out the inflation of the claims or the — she also relied on some assumptions about costs, which, you know, I mean, we are in the strange position now where the — the brief of the — is now telling us things, you know, about what may or may not be the case with regard to — There is one significant point here that I would like to make with respect to those findings on the overstatements and misstatements in the income and the expenses. Nowhere does Mr. Sherman challenge the district court's finding. Even now before this Court, Mr. Sherman in his briefs did not challenge the finding that the district court made with respect to the overstatement of the — the improper inclusion of personal expenses, nonbusiness expenses in his business case. I thought he did. I thought he had said something to the effect of that they were not duplicative and they were — but whatever they were, there's no record about what they were. I mean, she was just making some assumptions. No. I do believe the record itself, and we made the point, that there were a variety of things the Court looked at, telephone expenses. I'm not talking about those. I'm talking strictly about the district court's finding that on the face of the schedule, on the face of Mr. Sherman's expense schedule, he had improperly included personal and nonbusiness expenses. And that is — So you said you weren't relying on this. What are you relying on, then? You said that that was not what the SEC came in with, and that was my perception as well. No. It was not what the SEC came in with. So what did it come in with? The facts and circumstances leading up to the petition that indicate that Mr. Sherman was using the bankruptcy for improper means. Which is? What's the improper means? Seeking to avoid the district court's jurisdiction in the disgorgement hearing. But that's only improper if the bankruptcy is otherwise improper, right? I mean, if in fact he had, you know, no money in the world and 75 filed cases against him, would there be a problem? I think it's a facts and circumstances. She didn't look at this. The judge did not look at this one fact in isolation. Looking at the fact that there was a contempt judgment due and outstanding that he had failed to pay, he was — he filed the petition two days before there was a hearing scheduled on the disgorgement motion, which he did not oppose. He did not appear at the hearing. And instead, he sought to interpose the automatic stay and argued to the district court that it could not continue on the disgorgement motion. All of those factors are factors that Kahn recognizes as may provide cause. In addition, you have the disgorgement judgment itself. And the commission also relied on the fact that he had overstated his liabilities, although he claimed that this wasn't the only reason he was in bankruptcy. The facts, the undisputed facts in the record don't suggest that there was any other reason why he was in bankruptcy, because he conceded that in two of the lawsuits that he listed, no one had actually threatened to sue him. May I back up just a second? What happened in the hearing before Judge Russell, the bankruptcy judge? The hearing? Yes. I am informed that nothing other than what you see on the page of transcript, that in essence we show the commission and Mr. Sherman appeared at the hearing. The commission's counsel has, you know, said, does the court have any questions? And the bankruptcy court said exactly what is in the record. No, there wasn't. Nobody sought to put on evidence on either side? No. Okay. Well, you're about 10 minutes, 11 minutes over your time. Does anybody have any further questions? Thank you, counsel. You've been very helpful. Thank you very much. You've been very helpful. We're equal opportunity. We'll give you 10 minutes. How's that? We're almost equal opportunity. I'd like to correct some of the misstatements made by my honorable counsel opponent. To begin with, Mr. Sherman did challenge the findings made by Judge Snyder, I think to the extent of about 24 pages in the appellant's opening brief. Well, may I ask you to take back a step and let me start where I left off. What happened in front of Judge Russell? In front of Judge Russell, there was a brief hearing. Why didn't you – I mean, you apparently decided you weren't going to put on evidence on either side. Well, he did the hearing. Judge Russell came out and denied the motion. And he made the following statement. I'm going to deny the motion. I think you're going to have to write Congress. The cases you cite, they're simply just pretty egregious cases. This is just a run-of-the-mill bankruptcy. If you think filing bankruptcy to not pay your debts is a bad thing, then I suggest you're going to have to write Congress because that's why people file bankruptcy. That's the whole nature of it. And then Judge Russell, who's been on the bench more than 30 years. Yes, but he's a good judge. We have to take that. He basically said to the SEC and the receiver, we do have Section 727. That's the fraud section. They have said, they have a judgment. It may be based on fraud. They should have filed an action for non-dischargeability under 727. We have Section 523. Well, it's based on fraud. I'm sorry. What judgment was based on fraud? 727. What judgment did they have that was possibly based on fraud? They don't. The counsel was stating that the receiver had one form of judgment, the judgment that the SEC had. But neither of them were based on fraud, as I understand it. One of them was for a breach of contract, essentially, and the other one was basically Sherman as the receiver of fraudulently obtained funds, but not that he engaged in fraud. Okay. Well, that's not the receiver in a receiver sense, but the recipient. No. Okay. Yes, I agree with the Court's reading on that. But he said, we have Section 523 if you think they have done evil things. But I see absolutely nothing in this case to indicate that we're dealing with any egregious situation. If this case were dismissed, I think the vast majority of the bankruptcies in the country would be dismissed. All right. Now, did the SEC, before the Bankruptcy Court, make these points about the inflation of the claims? I believe that their moving papers on the motion to file did have that. I did not work on that portion of the case, Your Honor. But it's my recollection that they did. Could you have come in with declarations or explanations of the claims? I believe that happened, yes, Your Honor. It did happen. You think there was something in the record from your client explaining the claims? I thought there was nothing in the record. I thought that's why we're doing it on appeal now. Right. Right what? Did you come into the Bankruptcy Court with an ---- And did impose it. There was not much argument in front of Judge Russell. I'm not talking about argument. Before the hearing, could you have submitted? Is there any reason you couldn't have submitted? Either declarations explaining the claims or proposed putting on a hearing regarding the claims? There was argument. There was some opposition filed. I can't tell you exactly what it said, Your Honor, and I wouldn't represent to the court. So that's somewhere in the record of the present case because we're still in that case. That's correct. So now let's assume that Judge Russell, the good judge that he is, had come out and said, well, I've read everything, and I'm going to ---- and he goes down and he recites what Judge ---- another good judge, Judge Snyder, says on appeal. Would you have jumped up and said, look, we need to take some evidence on this point? Well, to begin with, Your Honor, Judge Snyder could not make findings, independent findings. And that's the case ---- Okay. Well, let's get back, though, to my question. Let me get cut to the chase here. I mean, if this got remanded to ---- if Judge Snyder had remanded this to Judge Russell for findings, would you have put on evidence? Are you requesting us to put on evidence? Do you think you can defend against these charges? Or do you want us to proceed on the papers? Yes, Your Honor. I believe that if it had been remanded, then it would have been remanded not with new findings but recommendations from Judge Snyder. That would be consistent with the Hall case. The Hall case says that if the bankruptcy court's factual findings are silent or ambiguous, as to the material factual question ---- I'm familiar with that. But just so, because your time is running down, I want you to make sure to get to everything. Why I take it that this ---- that there was no attempt by you or the SEC to say, Judge, we want a hearing on this. We have witnesses lined up, and we want to have a full adversary hearing as we normally do. Nobody said that. Nobody said that. Everybody agreed to proceed on the papers. In front of, I believe, both Judge Snyder and Judge Russell. That's correct. Okay. Yes. Now, you have other points to make. Yes. Very briefly, Your Honor. Sherman did challenge findings. That's contained in our opening brief, the appellant's opening brief. It lays out all the matters that contradict the findings that were made by Judge Snyder. And as I stated, the Hall-Bayou tree case clearly states that she can review. She can't make findings. She must send it back to the bankruptcy court to make findings consistent with her recommendations. They may not make their own independent findings. The other item is counsel stated that there was a pending 707A motion. Prior to the reenactment of 4004, Morgan clearly stated that a 707A motion does not extend the time for the filing of a nondischargeability action or a claim or an exception to the bankruptcy. In fact, the SEC, to my knowledge, has never filed a claim for the monies they contend is due them in Mr. Fitton's bankruptcy. I have a question. Is there a pending SEC claim? And not in the bankruptcy. There's not. None. I have never seen one, and I had the entire record. They never filed a claim. 707B. But, you know, an exception to the automatic stay is government regulatory action. So even at this moment, the SEC could file something independent of all of this, and the bankruptcy wouldn't bar that, right? Bankruptcy has been closed already, Your Honor. No, I understand that. But, I mean, if they, even if we're on pre-petition conduct. They could move to reopen, yes. They would say, well, not to reopen, but the automatic stay doesn't apply to them on a regulatory matter, so. Right. This is a case. Let's see. I just have a few more notes. Court, give me one moment. Go ahead and take a moment. It's a complicated case. We've located the question you asked about the opposition, and there's a memorandum of points and authorities in support of the SEC's motion to dismiss the case. In the bankruptcy court, that starts at our tab 3, page 639 through page 763, and a memorandum of points and authorities in opposition, and the declaration of Richard Sherman is tab 4, pages 764 through 825. So extensive opposition, moving papers in opposition. Thank you. Briefly, in closing, Your Honor, it's very clear that in this case, the SEC did not file an adversary action within the applicable period of time. They have yet to file a proof of claim. They have yet to request an extension of time for doing such acts or requesting a stay. Either the SEC in this case has no independent standing to seek dismissal of the bankruptcy petitioned by virtue of the settlement with the receiver and the receiver's action, or alternatively, the SEC's motion to dismiss is moot because of its failure to timely preserve its purported rights and remedies. The law is at issue here. The law says you must file your either adversary action, your claim within a period of time so the people who filed bankruptcy can get on with their lives. The Shermans entered into the settlement agreement with the receiver in good faith that it would do what it said, that is, that they agreed to a stipulation for a nondischargeable judgment, which would not be filed if they paid the two $25,000 payments. The receiver purported to represent both the interests of the SEC and itself. The document was prepared by the receiver's counsel. Why would the Shermans pay dollar for dollar against a promise for a stipulation judgment only to find out that the dollar for dollar is only good for a $50,000 credit against the claim of the SEC? The judgments are one and the same. There's only one judgment. The judgment for contempt for $54,000 was issued to both the receiver and the SEC. The judgment for or the distorted gorgement claim was brought by the receiver and the SEC. The two of them joined in only because Judge Snyder did not want to do anything that would be contrary to the automatic stay. The receiver agreed at the hearing that he was subject to the automatic stay, but she made it very clear in her order when she gave the judgment or the disgorgement, she was giving them power to enforce claims such as injunctive relief and other police powers. But she told them, you must go to the bankruptcy court to enforce collection of that judgment. They didn't do that. They had plenty of time between Judge Snyder's remarks and comments and Judge Russell's comments about you have other remedies to protect your interest. They failed to do so. Therefore, we respectfully request that the Court rule in favor of these two decisions. Thank you very much for your time. Roberts. Thank you both for your arguments. These are very helpful this morning and for your thorough preparation for coming. Cases heard will be submitted. Proceed to the next case on the oral argument calendar, which is Kemp versus Provident Life and Casualty Insurance Company, number 03-56966.
judges: Thomas, Berzon, Mahan